IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DTRIC INSURANCE COMPANY, LIMITED, and ROSALINDA HIRATA,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 21-00308-JAO-RT |
| CORINNE FELICIANO,<br>         Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 21-00417-JAO-RT |
| 21ST CENTURY CENTENNIAL INSURANCE COMPANY as subrogee of VICTOR FELICIANO,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 22-00043-JAO-RT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

Defendant United States of America ("Defendant") seeks summary judgment in three consolidated Federal Tort Claims Act cases arising from a five-car accident caused by a federal employee. For the following reasons, the Court GRANTS the motion in part and DENIES it in part.

## I. BACKGROUND

The Court consolidated the three captioned case numbers for all purposes, except as to damages. *See* ECF No. 31.[1] The Court refers to the plaintiffs in Civ. No. 21-000308-JAO-RT (DTRIC Insurance Company, Ltd. and Rosalinda Hirata) as "Plaintiff DTRIC" and "Plaintiff Hirata" respectively, and collectively as "DTRIC Plaintiffs." The plaintiffs in Civ. No. 21-00417-JAO-RT (Corinne Feliciano) and Civ. No. 22-00403-JAO-RT (21st Century Centennial Insurance Company as subrogee of Victor Feliciano) will be referred to as "Plaintiff

---

[1] Unless otherwise indicated, all ECF citations are to documents filed in Civil No. 21-00308-JAO-RT (*DTRIC Insurance Company, et. al. v. United States of America*). The Court will refer to documents filed exclusively in Civil No. 21-00043-JAO-RT (*21st Century Centennial Insurance v. United States of America*) (*i.e.,* before the Court granted the motion to consolidate) as "21st Century ECF." Documents exclusively filed in Civil No. 21-00417-JAO-RT (*Corinne Feliciano v. United States of America*) will be cited as "Feliciano ECF."

Feliciano" and "Plaintiff 21st Century" respectively, and collectively as "Plaintiffs." As discussed below, DTRIC Plaintiffs did not oppose the motion.

A.  **Factual History**

Unless otherwise indicated, the following facts are undisputed.

On October 31, 2018, while driving a government-issued vehicle and conducting government business, 61-year-old Gerald Young ("Young"), an employee of the United States Army Corps of Engineers, caused a chain reaction collision with four other cars on the freeway. ECF No. 46 ("Dft CSF") ¶¶ 1, 4; ECF No. 51 ("Plts CSF") ¶¶ 1, 4. According to a police report, Young first veered from lane #6 into lane #5 and collided with a car driven by a person not party to any of these lawsuits. *See* ECF No. 46-4 at 9–10. That caused a chain reaction whereby the other person's car crashed into an SUV registered to Plaintiff Hirata in lane #5. *Id.* Meanwhile, Young sideswiped a retaining wall and rear-ended a car driven by Plaintiff Feliciano and occupied by her husband Victor Feliciano, forcing them into a vehicle driven by another person not party to these actions. *Id.*

Under the "Human Factors" section of the Motor Vehicle Accident Report, one of the officers at the scene marked "Fatigue," and did not mark "Illness" or "Phys. Impaired." *Id.* at 4. But Defendant avers that Young suffered a seizure before and during the accident. ECF No. 45-1 at 4, 7; Dft CSF ¶ 4. Defendant

alleges that Young only awoke when a freeway service patrol officer knocked on his driver's side window.  Dft CSF ¶ 5; ECF No. 46-2 ("Young Decl.") ¶ 13.

Following the accident, Young was transported to Pali Momi Medical Center ("Pali Momi"), where several doctors evaluated and treated him, diagnosing him with "epilepsy, unspecified, not intractable, without status epilepticus."  Dft CSF ¶ 6–7; Plts CSF ¶ 6–7.  Further testing determined that, on the day of the incident, Young's blood showed therapeutic levels of phenobarbital, a medication prescribed for seizure prophylaxis.  Dft CSF ¶ 9; Plts CSF ¶ 9.  On November 1, 2018, Young was discharged from the hospital and doctors restricted him from driving for six months.  Dft CSF ¶ 12; Plts CSF ¶ 12.

One of Young's treating physicians at Pali Momi reiterated Young's story, indicating in medical records that "he blacked out while driving on the freeway . . . caus[ing] a major motor vehicle accident.  He awoke after a few minutes to a policeman knocking on his car window."  ECF No. 51-7 at 4.  Defendant further reports that Young routinely checks in with his physicians, is diligent about taking his medication, gets about seven hours of sleep per night, and, other than the six-month period after a 1993 seizure and the seizure in this case, has "never been restricted by a physician from performing [his] employment duties, including driving."  Young Decl. ¶¶ 20, 25.

Dr. Angeles Cheung concluded in a neuropsychological independent medical examination report ("IME") that Young most likely experienced a "breakthrough seizure."[2]  ECF No. 46-7 at 7.  Dr. Cheung further opined that Young's breakthrough seizure "was unlikely foreseeable" because he lived a healthy lifestyle that included staying on top of his medication and "maintain[ing] good sleep habits."  *Id*.  In other words, Dr. Cheung explained that Young "could not have done anything differently to prevent a breakthrough seizure."  *Id*. at 8.

Plaintiffs dispute whether Young suffered an epileptic seizure at all.  Plaintiff Feliciano claims that, as the person offering "the only first-hand witness account of the accident on record," ECF No. 50 at 8, she saw Young "awake and alert behind the wheel" when he hit her front passenger side door.  ECF No. 51-2 ¶ 5; Plts CSF ¶¶ 15, 17, 19.  Plaintiffs also contend that if Young did suffer a seizure, it was foreseeable because he had a history of seizures, and he was sleep deprived and suffering from stressors that he should have known could trigger his seizures.  Plts CSF at ¶¶ 8–10.

Plaintiffs further proffer that two separate doctors, Dr. Raymond Chock in 1986 and Dr. Chew Mung Lum in 1993, advised Young not to drive due to his

---

[2]  A breakthrough seizure is defined as a seizure that occurs in an individual after experiencing sustained periods free from seizures, usually at least 12 months.  ECF No. 46-7 at 7.

condition. ECF No. 51-7 at 7–12. Dr. Chock prescribed Young phenobarbital as an anticonvulsant and cautioned that "[h]e would be able to participate in work and gainful activity but with the limitation against driving[.]" ECF No. 51-7 at 12. And according to Young's wife, Young "was dissatisfied or did not agree with some of the recommendations [by his doctor(s)][3] and, therefore, did not follow-up." *Id.* at 8. When rendering his diagnosis and treatment plan for epilepsy, Dr. Lum requested that Young notify the Department of Motor Vehicles of his diagnosis. *Id*. at 7.

Further adding to the disputed facts, the parties point to arguably inconsistent findings by the doctors who treated him after this incident. Defendant relies on the notes of Dr. Huidy Shu that indicated that Young has a "[h]istory [that] is suggestive of a breakthrough epileptic seizure." ECF No. 46-5 at 11. Dr. Shu further observed that, "[t]here is no smoking gun for why [Young] [had] this breakthrough seizure. He has been compliant with medications, after 15 years of being seizure free." *Id*. Dr. Shu recommended Young "avoid driving for a minimum of 6 months seizure free." *Id*.

Plaintiffs highlight Dr. Carsten Zieger's notes which reported Young was "[n]egative for seizures and speech difficulty." ECF No. 51-7 at 3. And according

---

[3] It is unclear from the record presented to the Court which doctor's recommendation Young's wife said he disagreed with. *See* ECF No. 51-7 at 7–9.

6

to Dr. Amr El-Sergany, one of the final diagnoses included "[s]leep deprivation." ECF No. 51-7 at 2. Dr. El-Sergany also wrote that Young "has been under more stress at work, with a busy schedule and less sleep at night. Sleeps 5-6 hours per night on average recently." *Id*. at 4. Dr. Shu also "agrees that [Young] does not get enough sleep." *Id*. at 5. Then in a follow-up visit on April 30, 2019, Dr. Shu identified "sleep deprivation as the likely trigger" of the breakthrough epileptic seizure. *Id*. at 6.

**B.    Procedural Background**

    **1.    DTRIC Plaintiffs' Case (Civil No. 21-00308-JAO-RT)**

On October 20, 2020, DTRIC Plaintiffs filed their Complaint in the Circuit Court of the First Circuit State of Hawaiʻi. ECF No. 1 at 2. The Complaint was originally against Young, but pursuant to the Federal Tort Claims Act, the case was removed to the District of Hawaii after it was certified that Young was acting within the scope of his employment with the government. ECF No. 1 at 3–4; *see* 28 U.S.C. § 2679. Defendant was then substituted for Young. ECF No. 6.

The Complaint alleges three counts, but only Count 1 — negligence — is substantive. The latter two counts simply allege damages suffered by Plaintiff DTRIC and its insureds (Plaintiff Hirata and a non-party to the suit) who were involved in the accident. ECF No. 1-2 ¶¶ 13–20.

    **2.    Plaintiff Feliciano's Case (Civil No. 21-00417-JAO-RT)**

Plaintiff Feliciano filed her Complaint on October 19, 2021.  Feliciano ECF No. 1.  She initially named Young, the United States of America Department of the Army, and the United States Army Corps of Engineers as defendants.  *Id*.  The parties later stipulated to the substitution of Defendant for Young, and that Defendant is the "only proper federal Defendant."  Feliciano ECF No. 23.  Her Complaint alleges Negligence (Count I), Joint and Several Liability (Count II), and Negligent Infliction of Emotional Distress (Count III).  Feliciano ECF No. 1.

### 3. Plaintiff 21st Century's Case (Civil No. 22-00043-JAO-RT)

Plaintiff 21st Century, as subrogee of Victor Feliciano, filed a Complaint on January 27, 2022, against Defendant.  21st Century ECF No. 1.  The Complaint sets forth "General Allegations" that outline a negligence claim.  *Id*.

### 4. Case Consolidation

On March 30, 2022, the Court granted Defendant's unopposed motion to consolidate the three cases for all purposes, except the parties agreed to bifurcate the cases as to damages only.  ECF No. 35.

### 5. The Motion For Summary Judgment

On October 18, 2022, Defendant filed its Motion for Summary Judgment.  ECF No. 45-1.  Plaintiff Feliciano opposed the motion, ECF No. 50, and Plaintiff 21st Century filed its joinder to her opposition, ECF No. 52.  DTRIC Plaintiffs did not respond.  Defendant filed a reply on January 13, 2023.  ECF No. 53.  The

Court held a hearing on the Motion for Summary Judgment on February 13, 2023; DTRIC Plaintiffs did not appear. ECF No. 57.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952

9

F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991) (citing *id.*).

If the nonmoving party fails to assert specific facts beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994) (citing *id.*); *Blue Ocean*, 754 F. Supp. at 1455 (same).

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)) (footnote omitted). Inferences must be drawn in favor of the nonmoving party. *See id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under

the governing substantive law. *See id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaiʻi*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

## III. DISCUSSION

### A. Plaintiff Feliciano and Plaintiff 21st Century

In essence, Plaintiffs assert negligence claims (including, in Plaintiff Feliciano's case, a claim of Negligent Infliction of Emotional Distress). Because there are facts in dispute regarding, among other things, whether Young had a seizure, and whether a seizure was foreseeable, avoidable, or preventable, Defendant cannot prevail in its motion as to these Plaintiffs.

"It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages." *Cho v. Hawaiʻi*, 115 Hawaiʻi 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) (citation omitted). Defendant argues that Plaintiffs cannot establish the first two elements. *See* ECF No. 45-1 at 10.

#### 1. Duty

The Court cannot conclude as a matter of law that Young did not owe a duty to the other drivers. The existence of a duty in a particular case "depends on the facts and circumstances attendant to that case." *Ah Mook Sang v. Clark*, 130 Hawaiʻi 282, 291, 308 P.3d 911, 920 (2013). In other words, "[t]he question of whether one owes a duty to another must be decided on a case-by-case basis." *Lee v. Corregedore*, 83 Hawaiʻi 154, 166, 925 P.2d 324, 336 (1996).

The Hawaiʻi Supreme Court has explained that defining the contours of duty requires more than just an assessment of the harm's foreseeability:

> A court's task — in determining duty — is not to decide merely whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.

*Pulawa v. GTE Hawaiian Tel*, 112 Hawaiʻi 3, 13, 143 P.3d 1205, 1215 (2006) (internal quotation marks, citation omitted). In other words, "[f]oreseeability as it impacts duty determinations refers to the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed[.]" *Id.* (internal quotation marks, citation omitted). Because of this, "[f]oreseeability . . . in the context of breach of duty and causation is a question of fact for the trier of fact to resolve." *Id.*

Here, parties dispute the facts at the core of whether Young owed a duty to the drivers of the other cars. If Young had a breakthrough seizure that he could not have anticipated, then he had no duty to prevent the seizure and resulting accidents. *See Cruz v. United States*, 987 F. Supp. 1299, 1302–03 (D. Haw. 1997) (explaining, when rendering findings of fact and conclusions of law after a bench trial, that "[t]he court must determine whether [the driver]'s incapacity was foreseeable such that he owed a duty" to the plaintiff). But, if he either did not have a seizure (and just fell asleep at the wheel) or could have anticipated the seizure and thus avoided driving, then he likely had a duty to the other drivers to prevent the accidents.[4] So, discerning whether he had a duty under the circumstances here will require findings about disputed facts.

Defendant argues that, as a matter of law, Plaintiffs cannot establish that Young owed Plaintiffs a legal obligation to conform to a standard of care, but the cases it cites are inapposite. ECF No. 45-1 at 6–11. *Sellers v. United States*, 792 F. App'x 495, 496 (9th Cir. 2020), concerned California's negligence laws and specifically the peculiar risk doctrine, neither of which is relevant to the Court's

---

[4] The parties argue over whether Young had a duty under HRS § 291C-101 — which addresses the duty to drive at a prudent speed — to avoid the collision here. *See* ECF No. 50 at 8-9, ECF No. 53 at 4. The Court agrees with Defendant that the statute does not apply in this context, where no one has suggested that Young was speeding.

13

analysis. And *Kahoʻohanohano v. Dept. of Human Serv.*, 117 Hawaiʻi 262, 178 P.3d 538 (2008), addressed whether a "special relationship" existed between the Department of Human Services and a minor. *Kahoʻohanohano*, 117 Hawaiʻi at 287, 178 P.3d at 563. Defendant also attempts to rely on *Cruz* for the proposition that Young's loss of consciousness was unforeseeable, but that case is clearly distinguishable. *See* ECF No. 45-1 at 13. In *Cruz*, the court concluded that the driver, who lost consciousness due to a heart block and hit an innocent bystander, was not negligent. *Cruz*, 987 F.Supp. at 1304. The court reasoned that the driver "was not aware of any underlying health condition and did not have symptoms from which he should have known of such an underlying health condition. Thus, he had no reason to foresee his loss of consciousness prior to deciding to drive." *Id*. at 1303. Here, however, whether a seizure caused Young's incapacity is in dispute, and even if he did have a seizure, unlike the driver in *Cruz*, he had prior knowledge of his medical condition, was under the care of a doctor, and was prescribed phenobarbital.

Finally, Defendant asserts that Plaintiff Feliciano's version of events as detailed in her declaration is simply not credible. *See* ECF No. 53 at 6. The Court will be the judge of that at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.").

Taking the evidence in the light most favorable to Plaintiffs, the Court cannot, as a matter of law, conclude that Young owed no duty to the other drivers involved in the accident he caused.

### 2. Breach

For similar reasons, the Court will not decide at this stage that Plaintiffs cannot prove that Young breached any duty he owed to the other drivers. "Whether there was a breach of duty or not, i.e. whether there was a failure on the defendant's part to exercise reasonable care, is a question for the trier of fact." *Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 385, 742 P.2d 377, 383 (1987). The Court cannot discern conclusively whether Young exercised reasonable care before or during the accidents, in part because there remain questions about how or why Young lost control of his vehicle. This is enough to leave for trial the question of whether he breached any duty he owed to Plaintiff Feliciano and her husband. The Court therefore DENIES the motion as to Plaintiff Feliciano and Plaintiff 21st Century.

### B. DTRIC Plaintiffs

DTRIC Plaintiffs do not enjoy the same outcome. They: (1) failed to oppose Defendant's Motion for Summary Judgment; (2) did not join in the opposition; (3) did not bother to appear before the Court at the hearing on February 13, 2023; and

(4) did not seek an extension of the time for filing an opposition pursuant to Federal Rule of Civil Procedure 6(b).

As a result of DTRIC Plaintiffs' failure to take any action to respond to the motion, the Court may "consider the [moving party's] fact[s] undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Similarly, the local rules state that "material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party." LR 56.1(g).

Because DTRIC Plaintiffs did not respond to the motion nor join in the opposition, the Court views the facts set forth in Defendant's Concise Statement of Facts as undisputed as to those plaintiffs. Such facts include that Young experienced a "surprising, unforeseeable, and non-preventable" breakthrough seizure, Dft CSF ¶ 10, and "had not been on any driving restrictions in about 20 years and was not restricted on the incident date." *Id*. ¶ 11. Additionally, in the IME, Dr. Cheung opined that Young "could not have done anything differently to prevent a breakthrough seizure" as he maintained a healthy and physically active lifestyle, had good sleep habits, and attended his medical appointments regularly. ECF No. 46-7 at 8–9. Further, Young had "never been restricted by a physician from performing [his] regular employment duties, including driving." ECF No.

16

46-2 ¶ 20. These undisputed facts demonstrate DTRIC Plaintiffs' inability to meet every element of negligence, and in particular foreseeability as a component of the duty and breach elements.

The Court therefore GRANTS summary judgment as to DTRIC Plaintiffs.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED as to Civ. No. 21-00417-JAO-RT and Civ. No. 22-00403-JAO-RT, and GRANTED as to Civ. No. 21-00308-JAO-RT.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, __March__, __15__, 2023.

Jill A. Otake
United States District Judge

Civil No. 21-00308 JAO-RT, *DTRIC Insurance Co., Limited, et al. v. United States*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT